**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PAULINE BOYLE, | ) |
| | ) |
| Plaintiff, | ) |
| | )     No. 21-cv-02136 |
| v. | ) |
| | )     Judge Andrea R. Wood |
| L-3 COMMUNICATIONS CORPORATION, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| NATIONAL UNION FIRE INSURANCE | ) |
| COMPANY OF PITTSBURGH, PA., | ) |
| | ) |
| Counter-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PAULINE BOYLE, | ) |
| | ) |
| Counter-Defendant. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Thomas J. Boyle, Jr. ("Thomas"), the husband of Plaintiff and Counter-Defendant Pauline

Boyle ("Boyle"), died in 2012 while working as a civilian trainer of the Afghan National Police.

Following the denial of her claim for accidental death benefits under Thomas's insurance policy,

Boyle brought the present action for breach of contract and violations of the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendant and

Counter-Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union"),

and several other entity Defendants alleged to have been Thomas's employer or otherwise

involved in administering benefits afforded him. Boyle sets forth these allegations in her

Corrected Third Amended Complaint ("Complaint"), which is now the operative complaint.

National Union, in turn, has asserted a counterclaim against Boyle ("Counterclaim"), seeking a declaratory judgment that Thomas's death was not a loss covered by its policy because it resulted from declared or undeclared war, or an act of declared or undeclared war. Now before the Court are the various Defendants' motions to dismiss Boyle's Complaint (Dkt. Nos. 55, 78, 81) and Boyle's motion to dismiss National Union's Counterclaim (Dkt. No. 73), all brought under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motions are granted in part and denied in part, and Boyle's motion is granted.

## BACKGROUND

For purposes of each motion to dismiss, the Court accepts all well-pleaded facts in the Complaint and Counterclaim as true and views those facts in the light most favorable to the nonmoving party. *See Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019); *United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016).[1]

### I.      The Parties

The Court begins by identifying the parties, a more challenging task than might be expected due to the number of Defendants, the shifting relationships among them, and the parties' inconsistent naming conventions.

Boyle, the Plaintiff and Counter-Defendant in this case, asserts claims for breach of contract and violations of ERISA against multiple Defendants, seeking to collect accidental death

---

[1] Boyle filed this action in April 2021 with the assistance of retained counsel. That counsel continued to represent Boyle for almost two years, until they were granted leave to withdraw in March 2023. (*See* Dkt. No. 105.) At the time Boyle's counsel was granted leave to withdraw, briefing of the parties' respective motions to dismiss the Complaint and Counterclaim had been completed. Boyle asked the Court to allow her time to look for new counsel, and so the Court held in abeyance its consideration of the pending motions to dismiss for a short time while she did so. Boyle did not retain new counsel, however, and thus she has been proceeding *pro se* since March 2023. In short, although Boyle currently represents herself, the Complaint and Boyle's filings in connection with the parties' motions to dismiss, as well as her other filings prior to March 2023, were drafted by counsel.

benefits allegedly due as the result of the death of her husband, Thomas. Boyle's Complaint generally categorizes the Defendants into three groups: (1) Defendants alleged to have been Thomas's employer; (2) Defendants alleged to have been plan administrators or otherwise responsible for administering the employee benefits afforded to Thomas; and (3) Defendant National Union, which allegedly issued the insurance policy under which Boyle seeks to recover.

With respect to the first group, the Complaint refers to Defendants L-3 Communications Corporation ("L-3 Communications"); L-3 Harris Technologies, Inc. ("L-3 Harris"); Military Professional Resources, Inc. ("MPRI"); Engility Corporation ("Engility"); and Science Applications International Corporation ("SAIC"), collectively, as Thomas's employer. (Corrected Third Am. Compl. ("CTAC") ¶¶ 2–9, Dkt. No. 52.) According to Boyle, SAIC is the successor to the other entities. (*Id.* ¶¶ 2, 9.) As any distinctions between the two entities are immaterial to the subject matter of this opinion, the Court generally treats L-3 Communications and L-3 Harris (collectively, "L-3 Defendants") as indistinguishable. Likewise, the Court considers Defendants MPRI, Engility, and SAIC (collectively, "SAIC Defendants") as a unit. Viewing the facts in the light most favorable to Boyle for purposes of the present motions to dismiss her Complaint, the Court accepts L-3 Defendants and SAIC Defendants (collectively, "Employer Defendants") as Thomas's employer.[2]

---

[2] The parties dispute which entity was actually Thomas's employer. L-3 Defendants deny that they were Thomas's employer but instead claim merely to have sponsored the employee benefit plan at issue. (L-3 Defs.' Mem. at 2, Dkt. No. 79.) They further assert that Thomas's employment agreement was with MPRI. (*Id.* at 3.) In their brief, L-3 Defendants explain that MPRI is a subsidiary of Engility, which itself was a subsidiary of L-3 Defendants until it was spun off in mid-2012. (*Id.* at 3.) SAIC then acquired Engility in 2019 and now owns both Engility and MPRI. (*Id.*) For her part, Boyle contends that the employment agreement was between Thomas and "MPRI, a division of L-3 Communications Corp." (Pl.'s Resp. Br. to L-3 Defs.' Mot. at 2, Dkt. No. 88.) She claims that discovery is needed to understand the history of the L-3 Defendants, their subsidiaries, spin-offs, mergers, and contract ownership. (*Id.* at 3.) Finally, SAIC Defendants do not take a definitive position on whether any of them was Thomas's employer. (SAIC Defs.' Reply Br. at 1–2, 11–12, Dkt. No. 97.) For the purposes of this opinion, the

The second group consists of entities that, according to Boyle, were responsible for administering the benefits afforded to Thomas through his employment. These include Defendants Marsh, Inc.; Seabury & Smith, Inc., doing business as Marsh U.S. Consumer; and Mercer Health & Benefits Administration LLC (collectively, "Mercer Defendants").

Finally, the Complaint identifies National Union as the insurer who issued the insurance policy at issue in this case.

## II.     The Policy

This case concerns Boyle's efforts to collect on a claim for accidental death benefits pursuant to an insurance policy issued by National Union for the benefit of Boyle's husband, Thomas.[3] National Union issued the insurance policy—specifically, the Group Accidental Death and Dismemberment Insurance Policy ("Policy")—with Employer Defendants as the named policyholder. The Policy states, in relevant part: "This Policy is a legal contract between the Policyholder and [National Union]. [National Union] agrees to insure eligible persons of the Policyholder (herein called Insured Person(s)) against loss covered by this Policy subject to its provisions, limitations and exclusions." (Countercl. ¶ 2, Dkt. No. 67.) Under the Policy, an "Insured" means:

> [A] person (1) who is a member of an eligible class of persons as described in the Classification of Eligible Persons section of the Master Application; (2) who has enrolled for coverage under the Policy, if required; (3) for whom premium has been paid; and (4) while covered under this Policy.

---

Court need not untangle the relationships among these Defendants to reach a conclusion on which was actually Thomas's employer.

[3] The allegations of the Complaint do not detail the relevant policy provisions. Thus, the Court relies on an exhibit to the Complaint and the Counterclaim to describe the provisions. When considering a motion to dismiss, the Court may consider "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citations omitted).

(*Id.* ¶ 3.) Further, an "Insured Person" means "an insured or an[] Insured Dependent." (*Id.* ¶ 4.) As an employee of Employer Defendants who enrolled for coverage under the Policy, Thomas was an "Insured Person" under the Policy. (*Id.* ¶ 13.)

According to the Policy, "Injury" is defined as "bodily injury: (1) which is sustained as a direct result of an unintended, unanticipated accident that occurs while injured person's coverage under this policy is in force, and (2) which, directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss." (*Id.* ¶ 5.) The Policy provides for an "Accidental Death Benefit"—that is, "[i]f injury to the Insured Person results in death within 365 days of the date of the accident that caused the Injury, [National Union] will pay 100% of the Principal Sum." (*Id.* ¶ 6.).

Most relevant to the Complaint and Counterclaim in this case, the Policy establishes an exception to coverage ("War Risk Exclusion") as follows:

> No coverage shall be provided under this policy and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury.
> . . . .
> 4. declared or undeclared war, or any act of declared or undeclared war.

(*Id.* ¶ 7.) However, a rider to the Policy, "attached to and made part of the [P]olicy," contains a waiver of the War Risk Exclusion ("War Risk Exclusion Waiver"). (CTAC, Ex. F, 11/27/2013 Decision Letter at 3, Dkt. No. 52-6.) The War Risk Exclusion Waiver provides:

> [The War Risk Exclusion] is waived for an insured person's loss caused in whole or in part by, or resulting in whole or in part from, declared or undeclared war or any act of declared or undeclared war, subject to the following restriction:
>
> 1. The waiver only applies with respect to accidents that occur within the geographic limits or territorial waters of, or airspace above the geographic limits or territorial waters of, a ***designated war risk territory***.

(*Id.*) According to the rider, a designated war risk territory ("Designated War Risk Territory") "means worldwide" and "does ***not*** include" Afghanistan, among other countries. (*Id.*) This exception for Afghanistan ("Afghanistan Exception") means that the Policy does not provide coverage for such accidents that occur in Afghanistan.

### III.  Boyle's Claims

Having established the necessary background, the Court summarizes the allegations of Boyle's Complaint as follows. These allegations are accepted as true for purposes of the motions to dismiss the Complaint.

In 2012, Boyle's husband, Thomas, worked as a civilian trainer of the Afghan National Police as part of Employer Defendants' Law Enforcement Professionals Program. (CTAC ¶¶ 1, 23, 27.) On October 3, 2011, Thomas entered into an employment agreement with Employer Defendants ("Employment Agreement"). (*Id.* ¶ 24.) The Employment Agreement provides that Thomas would be eligible to apply for benefits under Employer Defendants' employee benefits plan ("Plan"), including coverage under the Policy. (*Id.* ¶¶ 24–25.)

On April 26, 2012, while in transit to Afghanistan for his assignment, Thomas applied for the Policy via Employer Defendants' online application portal. (*Id.* ¶ 28.) Neither the online portal for Thomas's application nor the Summary Plan Description ("SPD") provided him with complete and accurate information regarding the Policy's coverage and exclusions—specifically, no one informed Thomas that he would not have coverage under the Policy for his tour in Afghanistan. (*Id.* ¶¶ 29, 31, 73.) Boyle claims that Mercer Defendants administered Employer Defendants' online application portal for the Policy. (*Id.* ¶¶ 14–21, 28.) She describes Mercer Defendants as the "Plan Administrator." (*Id.* ¶¶ 113, 152.) To date, none of the parties have sent Boyle a complete copy of Thomas's insurance application, despite her requests. (*Id.* ¶ 32.)

6

After reviewing Thomas's application, National Union issued the Policy, which was effective on June 1, 2012. (*Id.* ¶ 33.) A short time later, on June 19, 2012, Thomas was accidentally killed in Afghanistan. (*Id.* ¶ 36.) From the time Mercer Defendants started billing Thomas for the Policy on May 1, 2012, until the date of his death, Thomas paid all insurance premiums due on the Policy. (*Id.* ¶¶ 35, 37.)

On July 11, 2012, Boyle submitted a claim for benefits under the Policy in the amount of $670,000. (*Id.* ¶ 38.) According to the Policy, National Union had 60 days following receipt of written proof of loss—that is, until September 14, 2012—to pay Boyle's claim. (*Id.* ¶ 39.) In a draft denial letter dated September 26, 2012, which was not sent to Boyle, and other internal correspondence on October 8, 2012, National Union stated that Thomas sustained "an accidental death due to blast injuries," that Thomas "was killed 'by hostile, enemy force, ie insurgents,'" and that National Union would deny Boyle's claim under the Afghanistan Exception to the War Risk Exclusion Waiver. (*Id.* ¶¶ 43–44.) The statements regarding the manner of Thomas's death were false. (*Id.* ¶¶ 43–44.)

National Union subsequently denied Boyle's claim in a letter dated December 14, 2012—91 days after the deadline to respond to her claim. (*Id.* ¶ 47.) In its December 14, 2012, denial letter, National Union acknowledged that "enemy forces attacked, and [Thomas] was killed," and that Thomas "did sustain accidental injuries due to the attack" (*Id.* ¶ 48.) The letter went on, however, to explain that although the attack was considered an act of declared or undeclared war, Afghanistan was not a Designated War Risk Territory under the Policy. (*Id.* ¶ 48.) In short, National Union informed Boyle that the War Risk Exclusion Waiver did not include service in Afghanistan. (*Id.* ¶ 81.) Neither Thomas's Employment Agreement, nor the SPD, nor the online application portal had disclosed the Afghanistan Exception to the War Risk Exclusion Waiver.

(*Id.* ¶¶ 50–52.) In fact, the SPD, the Supplement to the SPD ("SPD Supplement"), and Policy certificate were not available on the portal at the time Thomas applied for coverage. (*Id.* ¶ 91.)

On March 1, 2013, Boyle appealed the claim-denial decision to the National Union ERISA Appeals Committee ("Appeals Committee"), which affirmed the denial on August 28, 2013. (*Id.* ¶¶ 54, 61, 116.) The Appeals Committee explained that it denied Boyle's claim because Thomas's cause of death was an excluded risk: declared or undeclared war, or any act of declared or undeclared war. (*Id.* ¶ 109.) Its decision was rendered 180 days after Boyle's appeal request, even though the deadline to affirm or reverse the denial was 60 days. (*Id.* ¶¶ 56, 61.)

On October 15, 2013, Boyle requested reconsideration of the adverse decision on the grounds that gunshot wounds, rather than blast injuries, had caused Thomas's death. (*Id.* ¶ 62.) In response, National Union sent Boyle another denial letter on November 27, 2013, denying her claim of accidental death by friendly fire. (*Id.* ¶¶ 65, 94.) Yet in internal correspondence dated November 12, 2013, the sender had indicated that National Union did not know the actual circumstances of Thomas's death. (*Id.* ¶ 64.) And other internal correspondence during the appeals process reveals that National Union expressed uncertainty concerning whether the Designated War Risk Territories for the War Risk Exclusion Waiver were in the SPD. (*Id.* ¶¶ 111, 113.) On July 7, 2016, National Union responded to Boyle's request for documents and modified language in its prior denial letters regarding the cause of Thomas's death and whether there was an SPD that explained his coverage. (*Id.* ¶ 66.) Boyle filed this lawsuit almost five years later on April 21, 2021. (*See* Dkt. No. 1.)

In the Complaint, Boyle asserts a breach of contract claim against National Union for delays investigating her claim and for denying her claim based upon the undisclosed Afghanistan Exception to the War Risk Exclusion Waiver (Count I). (CTAC ¶¶ 70–129.) As to Employer

Defendants, Boyle asserts breach of contract claims based on their purported failure to provide all necessary information about Thomas's benefits and depriving her of Thomas's benefits in contravention of Thomas's Employment Agreement (Count II), and claims for violations of ERISA, including Employer Defendants' alleged failure to disclose fully the Afghanistan Exception to the War Risk Exclusion Waiver (Count III). (*Id.* ¶¶ 130–49.) Boyle likewise asserts a claim against Mercer Defendants for violations of ERISA, such as failing to provide Thomas with the SPD, failing to provide Thomas with sufficient information about the Policy's exclusions during the application process, and failing to provide Boyle with timely and sufficient information about the status of her claims (Count IV). (*Id.* ¶¶ 150–61.)

## IV. National Union's Counterclaim

In response to Boyle's Complaint, National Union asserts a Counterclaim. It alleges as follows.

National Union issued the Policy to Employer Defendants for the policy period beginning January 1, 2012, and ending January 1, 2013. (Countercl. ¶ 1.) Thomas worked for Employer Defendants. (*Id.* ¶ 8.) He was an "Insured Person" under the Policy. (*Id.* ¶ 13.) While on assignment at a forward operating base near Kandahar, Afghanistan, Thomas was "mortally wounded" during an attack by insurgents on the base on June 19, 2012. (*Id.* ¶¶ 9–11.) National Union considers Thomas's death to have been caused by declared or undeclared war, or any act of declared or undeclared war, thereby falling within the scope of the War Risk Exclusion. (*Id.* ¶ 15.) Consequently, National Union asserts a declaratory judgment counterclaim, seeking a declaration that because Thomas's death occurred as a result of declared or undeclared war, or any act of declared or undeclared war, there is no coverage for his death pursuant to the Policy. (*Id.* ¶ 16.)

**DISCUSSION**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Although the Court accepts well-pleaded factual allegations as true, conclusory allegations will not be sufficient to prevent dismissal. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

I.    **Employer Defendants' and Mercer Defendants' Motions to Dismiss the Complaint**

As noted above, Boyle asserts two claims against Employer Defendants: breach of contract (Count II) and violations of ERISA (Count III). Employer Defendants argue that the claims against them must be dismissed for several reasons. ***First***, Employer Defendants argue that the breach of contract claim in Count II must be dismissed because that claim is preempted by ERISA and, in any case, Employer Defendants did not breach any provision of the Employment Agreement. ***Second***, Employer Defendants contend that both claims are untimely and thus barred by the statute of limitations. ***Third***, Employer Defendants assert that Boyle has not sufficiently pleaded violations of ERISA in Count III. Specifically, SAIC Defendants claim that Boyle has not adequately alleged how they deprived her of her rights under the Plan and that she fails to allege that they were the Plan administrator. Meanwhile, L-3 Defendants contend that the Policy did not

10

provide coverage for Thomas's manner of death, and that the SPD disclosed the War Risk Exclusion to Thomas and directed him to contact the Human Resources Department for a list of Designated War Risk Territories, which he did not do.

With respect to Mercer Defendants, Boyle asserts a single claim for violations of ERISA (Count IV). Like Employer Defendants, Mercer Defendants argue that the ERISA claim must be dismissed as untimely. They further contend that Boyle has failed plausibly to allege that they were the Plan administrator or that they never responded to a written request for documents that ERISA required them to provide.

### A. Objections to Exhibits

Before proceeding to the merits of Defendants' arguments for dismissal, the Court addresses Boyle's objections to six exhibits attached to L-3 Defendants' brief in support of their motion to dismiss.

L-3 Defendants' first three exhibits consist of press releases about (1) a reported merger between the Harris Corporation and L-3 Technologies that created L-3 Harris, (2) the spin-off of Engility, and (3) SAIC's subsequent acquisition of Engility. (L-3 Defs.' Mem., Ex. 1, Dkt. No. 79-1; L-3 Defs.' Mem., Ex. 2, Dkt. No. 79-2; L-3 Defs.' Mem., Ex. 3, Dkt. No. 79-3.) L-3 Defendants claim that they provided the press releases merely as background information about the parties. (L-3 Defs.' Reply Br. at 11–12, Dkt. No. 95). Boyle, however, argues that L-3 Defendants "appear[] to impose upon the court the burden to unilaterally take judicial notice of unverified press releases." (Pl.'s Resp. Br. to L-3 Defs.' Mot. at 3, Dkt No. 88.) According to Boyle, the Court should decline to take judicial notice of the documents as they are "***unverified*** press releases" and "offer more confusion" about the relationships between the parties. (*Id.* at 3–4.)

Whether considered or not, the content of the press releases would be immaterial to the Court's determination of the motions to dismiss. The Court further notes that L-3 Defendants have not requested that the Court take judicial notice of the press releases. And even if L-3 Defendants had done so, the Court agrees with Boyle that it would not be appropriate to take judicial notice of the facts asserted therein. Exhibits 1, 2, and 3 are therefore stricken and will not be considered in connection with the motions to dismiss.

L-3 Defendants' remaining three exhibits are: (1) the Declaration of Allison Oncel, L-3 Defendants' Senior Director of Global Benefits, Global Total Rewards ("Oncel Declaration"); (2) the 2010 SPD ("2010 SPD"); and (3) the 2009 SPD Supplement ("2009 SPD Supplement"). (L-3 Defs.' Mem., Oncel Decl., Dkt. No. 79-4; L-3 Defs.' Mem., Ex. A, 2010 SPD, Dkt. No. 79-5; L-3 Defs.' Mem., Ex. B, 2009 SPD Suppl., Dkt. No. 79-6.) In her declaration, Oncel states that she reviewed L-3 Defendants' company records and confirmed that the 2010 SPD and 2009 SPD Supplement were in effect in 2012 for the Policy that National Union offered, and that the attached documents are true and correct copies. (Oncel Decl. ¶¶ 3–5.) Boyle asks the Court to disregard or strike these exhibits because the 2010 SPD post-dates the 2009 SPD Supplement and does not incorporate it, and Employer Defendants were not Thomas's employer until 2012. (Pl.'s Resp. Br. to L-3 Defs.' Mot. at 4–5.)

In connection with a motion to dismiss, the Court "may consider documents that are (1) referenced in the plaintiff's complaint, (2) concededly authentic, and (3) central to the plaintiff's claim." *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) (citations omitted). In addition, "if a document explicitly references terms in another document, that second document also is incorporated." *Smith v. Lutheran Life Ministries*, No. 21 C 2066, 2021 WL 5937789, at *2 (N.D. Ill. Dec. 16, 2021) (citing *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735

(7th Cir. 2002)) (finding that it was proper to consider a copy of an ERISA plan attached to the defendant's motion to dismiss because the relevant contract referenced the plan and the defendant included a declaration that the attached plan was a true and correct copy).

Here, all three criteria are met for the 2010 SPD. Boyle references the 2010 SPD throughout her Complaint. (*See, e.g.,* CTAC ¶¶ 51, 84–85, 95–96, 117, 156.) The 2010 SPD is also central to her claims that Employer Defendants failed to disclose the Afghanistan Exception to the War Risk Exclusion Waiver and deprived her of Thomas's employee benefits. As to authenticity, Oncel submits that the 2010 SPD is a true and correct copy of the document, and that this SPD was the version in effect in 2012. (Oncel Decl. ¶ 4.) Indeed, the 2010 SPD expressly provides that it is "[e]ffective January 1, 2010." (2010 SPD at 2.) This effective date precedes all the relevant events in 2012 and 2013. Further, the 2010 SPD is the same SPD that Boyle attached to her Complaint (*see* CTAC, Ex. B, Dkt. No. 52-2), even though Boyle maintains that she cannot confirm that the 2010 SPD was the same SPD in effect at the time of Thomas's application. (CTAC ¶ 30.) Without any real dispute over the authenticity of the 2010 SPD and the Oncel Declaration, the Court denies Boyle's request to disregard or strike those documents.

For similar reasons, the Court declines to disregard or strike the 2009 SPD Supplement. First, the 2010 SPD—attached to the Complaint and motion to dismiss—mentions a "***Supplement***" numerous times and directs the reader to "[r]efer to the ***Supplement***" for certain rules and provisions. (2010 SPD at 5, 6, 8, 12, 14, 19, 27, 32); *cf. 188 LLC*, 300 F.3d at 735 (affirming the district court's decision to consider a form attached to a motion to dismiss because the contract attached to the complaint noted that it was subject to the general terms and conditions of another form). Even Boyle acknowledges that the 2010 SPD "references an SPD Supplement." (CTAC ¶ 30.) Indeed, the 2010 SPD notes that certain Plan provisions are "specified in the

accompanying *Supplement*," that Plan participants should "[r]efer to the *Supplement* for the eligibility and participation rules that apply" to them, that Plan participants should "[r]efer to the *Supplement*" to determine if the Policy is available to them, and that "[t]his booklet and the accompanying *Supplement* constitute the Summary Plan Description (SPD) for L-3 Communications' Life and Accident Insurance Plans." (2010 SPD at 5–6, 19, 27.) The 2009 SPD Supplement further provides that "[t]his *Supplement* describes specific life and accidental death and dismemberment (AD&D) insurance provisions of the L-3 Communications Welfare Plan that apply to eligible MPRI employees as of January 1, 2009." (2009 SPD Suppl. at 2.) In other words, the 2009 SPD Supplement became effective as of January 1, 2009, a date that precedes 2012 and 2013. Thus, the Court finds it proper to consider the 2009 SPD Supplement.

### B.   Breach of Contract Claim Against Employer Defendants (Count II)

Turning to the merits, the Court first considers Boyle's breach of contract claim against Employer Defendants. Boyle alleges that Employer Defendants breached the Employment Agreement by failing to provide all the necessary information about Thomas's benefits and depriving her of Thomas's benefits. (CTAC ¶ 132.) In response, Employer Defendants raise two affirmative defenses: preemption and the statute of limitations.

Employer Defendants first contend that Boyle's breach of contract claim in Count II must be dismissed because it is preempted by ERISA. Preemption is considered an affirmative defense, meaning that "pleadings need not anticipate or attempt to circumvent [the defense]." *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). To determine whether a federal statute preempts state law, courts first consider Congress's intent. *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013). "[G]iven the historic police powers of the states, a court must assume that Congress did not intend to supersede those powers unless the language of the statute

expresses a clear and manifest purpose otherwise." *Id.* (citations omitted). With respect to ERISA, the statute applies "to any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a)(1). And ERISA contains an express preemption clause, stating that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Therefore, if a state-law claim "is within the scope of Section 502(a) of ERISA it is completely preempted, no matter how the [plaintiffs] have characterized it." *Klassy v. Physicians Plus Ins. Co.*, 371 F.3d 952, 954 (7th Cir. 2004) (citation omitted) (affirming dismissal of the plaintiff's state-law malpractice claim as preempted under ERISA).

The Seventh Circuit has established a three-factor test for determining whether a claim falls within the scope of § 502(a) and thus is preempted by ERISA. *Id.* at 955. First, the plaintiff must be eligible to bring a claim under § 502(a). *Id.* Second, the Court considers "whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a)." *Id.* (citation omitted). For this factor, the relevant inquiry is whether the basis for the plaintiff's claim "concerns her rights 'to recover benefits due to [her] under the terms of [her] plan.'" *Id.* (quoting 29 U.S.C. § 1132(a)(1)). And third, the Court determines "whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law." *Id.* (citation omitted).

As to the first factor, Boyle is eligible to bring a § 502(a) claim because she is a Plan beneficiary. *See* 29 U.S.C. § 1132(a)(1). For the second factor, Boyle's breach of contract claim falls within the scope of ERISA as it concerns Boyle's right to recover benefits under the terms of the Plan. Specifically, Boyle alleges that she is entitled to Thomas's death benefits under the Policy and that Employer Defendants have deprived her of those benefits. (CTAC ¶¶ 131–32.) As

to the third and final factor, it is clear that Boyle's state-law claim cannot be resolved without an interpretation of the ERISA-governed Plan language to determine what benefit information Employer Defendants were required to disclose and allegedly failed to provide, whether Thomas's cause of death was covered, and whether Boyle was entitled to Thomas's benefits. In sum, all three requirements for preemption are satisfied; hence, ERISA preempts Boyle's breach of contract claim.

Boyle attempts to avoid this outcome by arguing that her claim does not rely exclusively on the terms of the Plan; instead, her claim also includes an allegation that Employer Defendants failed to provide Thomas with all his benefit information as promised by the Employment Agreement. But this argument is unavailing, as "a law 'relates to' an ERISA plan 'if it has a connection with or reference to such a plan,'" and such a reference will result in preemption "where the existence of ERISA plans is essential to the law's operation." *Halperin v. Richards*, 7 F.4th 534, 541 (7th Cir. 2021) (first quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983); and then quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319–20 (2016)); *see also Trainor v. SBC Servs., Inc.*, No. 04 C 779, 2004 WL 2958684, at *4–5 (N.D. Ill. Dec. 20, 2004) (dismissing state-law breach of contract and fraud claims that could not "be resolved without reference to and interpretation of" the relevant ERISA plan). And as explained above, Boyle's claim relates to the Plan because the Court must refer to the Plan's benefit provisions and ERISA's disclosure requirements to evaluate if Employer Defendants failed to provide Thomas with necessary information about his benefits.

In sum, the Court concludes that Boyle's breach of contract claim against Employer Defendants is preempted under ERISA. Because the breach of contract claim is preempted, the

Court need not reach Employer Defendants' affirmative defense as to the statute of limitations. Count II against Employer Defendants is accordingly dismissed.

### C. Claims for ERISA Violations Against Employer Defendants and Mercer Defendants (Counts III and IV)

Moving on to Boyle's claims for ERISA violations, she alleges that Employer Defendants (Count III) and Mercer Defendants (Count IV) violated ERISA in numerous ways, including failing to provide Thomas with the 2010 SPD and 2009 SPD Supplement, failing to provide Thomas with sufficient information about the Policy's coverage and exclusions during the application process, failing to provide Boyle with timely and sufficient information about the status of her claims, and failing to provide Boyle with all benefits owed to her. With their respective motions to dismiss, Employer Defendants and Mercer Defendants argue that Boyle's ERISA claims are time-barred; alternatively, they contend that Boyle does not plausibly allege that they violated the relevant sections of ERISA.

### 1. Section 502(c) of ERISA

Boyle first cites § 502(c) of ERISA as a provision that Employer Defendants and Mercer Defendants violated. Section 502(c) permits beneficiaries of an employee welfare benefit plan to bring a civil action against a plan administrator for its failure to comply with a request for information that the administrator is required by ERISA to provide. *See* 29 U.S.C. § 1132(a)(1)(A), (c)(1). The Court has discretion to impose personal liability on the administrator in an amount up to $100 per day from the date of such failure if the administrator fails to provide the requested information within thirty days of a request. *Id.* § 1132(c)(1). Employer Defendants and Mercer Defendants assert that Boyle's ERISA claims under § 502(c) are barred by the statute of limitations.

Boyle, in her response to Mercer Defendants' motion to dismiss, asserts that Mercer Defendants have "mis-characterize[]" her claim as arising under "ERISA's 'penalties' provisions," and that she "concedes relief under ERISA's penalty provisions, and relies upon §§ 502(a)(1)(B) and 502(a)(3)." (Pl.'s Resp. Br. to Mercer Defs.' Mot. at 5, 12, Dkt. No. 64.) It is peculiar that Boyle would describe Mercer Defendants' argument as a mischaracterization, given that Boyle cites § 502(c) in Count IV and asks the Court to award her $100 per day in penalties for Mercer Defendants' alleged failure to disclose. (CTAC ¶ 151.) In any case, due to Boyle's concession that she is not asserting an ERISA claim under § 502(c), the Court dismisses any such claim in Count IV against Mercer Defendants.

The Court next considers Employer Defendants' statute-of-limitations argument for § 502(c). ERISA does not contain a limitations period for claims under that section; so, the Court must look elsewhere. When an ERISA provision does not specify a limitations period, the Court must "borrow the most analogous statute of limitations from state law." *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 815–16 (7th Cir. 2010) (citation omitted). Even so, the accrual of ERISA claims is still governed by federal common law. *Id.* at 816. The Seventh Circuit has cautioned that the Court should not automatically apply the forum state's limitations period; instead, the Court should apply a different state's limitations period when that "state has a significant connection to the dispute and its limitations period is more consistent with federal ERISA policies." *Id.* (citation omitted). With respect to ERISA policies, "uniformity of treatment among beneficiaries is a primary concern." *Berger v. AXA Network LLC*, 459 F.3d 804, 814 (7th Cir. 2006) (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)). In particular, "ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform

standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'" *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (citation omitted).

Relevant factors for determining whether a state has the most significant connection to the dispute include the location of the plan administrator's headquarters, the location of the decision giving rise to the dispute, the particular state listed in the plan's choice-of-law provision, the location of the majority of the class members in the case of a class action, the location of the named plaintiffs, and where the forum state is. *Cf. Young*, 615 F.3d at 816 (holding that Pennsylvania had the most significant connection to the case because the plan administrator was headquartered in Pennsylvania and drafted the plan there, more class members lived there, and the plan chose Pennsylvania law to fill any gaps left by ERISA); *Berger*, 459 F.3d at 813–14 (concluding that New York law applied, even though Illinois was the forum state and domicile of the named plaintiffs, because the corporate decision to change the criteria for benefits eligibility occurred in New York and the plan chose New York law to govern non-ERISA disputes); *Jenkins v. Local 705 Int'l Bhd. of Teamsters Pension Plan*, 713 F.2d 247, 251 (7th Cir. 1983) (finding that Illinois law governed because Illinois was the state where the plan was administered, the plan administrator was located, the plan's headquarters were located, and the plan's agents were located).

Here, Boyle and Employer Defendants dispute whether New York law or Illinois law applies. After considering the relevant factors, the Court finds that Employer Defendants have the better argument. L-3 Communications—the Plan sponsor, Plan administrator,[4] and named

---

[4] ERISA defines the plan administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). Only if the plan's operating instrument does not designate a plan administrator will the plan administrator be the plan sponsor or another person that the Secretary of Labor prescribes by regulation. *Id.* § 1002(16)(A)(ii), (iii). Although Boyle alleges that Mercer Defendants are the Plan administrator and that National Union called Mercer

19

fiduciary—is located in New York. (2010 SPD at 32.) Indeed, Boyle alleges that its principal

place of business is in New York. (CTAC ¶ 3.) The Plan is therefore administered in New York.

Likewise, National Union, the insurer and issuer of the Policy, has its principal place of business

in New York. (2010 SPD at 32; CTAC, Ex. C at 2, Dkt. No. 52-3; CTAC ¶¶ 11–12.) Further, the

2010 SPD identifies New York law as governing if there is no controlling federal or state law.

(2010 SPD at 28.) While the Court agrees with Boyle that it is relevant that Illinois is the forum

state and home of the plaintiff and the decedent, Illinois's connection to the dispute is nonetheless

outweighed by New York's connection to the Plan and Plan decisionmaking. *Cf. Berger*, 459 F.3d

at 814 (rejecting the view that Illinois had the most significant connection to the dispute merely

because it was the forum state and home of the named plaintiffs and noting that if the court

"follow[ed] the plaintiffs' theory to its logical end, this class action would be governed by a

'crazy quilt' of limitations periods and the federal interest in uniformity would be rendered

nugatory" (citation omitted)). Moreover, application of New York law—instead of the law of the

forum state and plaintiff's residence—is more consistent with ERISA's objectives to ensure

uniformity of treatment among plan beneficiaries and to encourage predictability concerning plan

disputes. As a result, the Court applies New York's statute-of-limitations period to the present

dispute.

Next, the Court must identify the state-law cause of action most analogous to ERISA

claims under § 502(c). The Seventh Circuit has not expressly answered this question, nor weighed

---

Defendants the Plan administrator in internal notes (CTAC ¶¶ 113, 152), the 2010 SPD clearly identifies
L-3 Communications as the Plan sponsor and administrator (2010 SPD at 32). While the Court generally
accepts a plaintiff's well-pleaded allegations as true for purposes of a motion to dismiss, "[w]hen an
exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even
when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (citation
omitted).

in on a current Circuit split regarding the issue. *See St. Alexius Med. Ctr. v. Roofers' Unions Welfare Tr.*, No. 14 C 8890, 2015 WL 5123602, at *4–5 (N.D. Ill. Aug. 28, 2015) (discussing the Circuit split). That said, the Seventh Circuit has previously referred to judgments awarded under § 502(c) for a plan administrator's failure to provide a plaintiff with requested documents as "statutory penalties." *See, e.g.*, *Huss v. IBM Med. & Dental Plan*, 418 F. App'x 498, 508–09 (7th Cir. 2011); *see also Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 806 (7th Cir. 2009) ("[T]he purpose of [§ 502(c)] penalties is to induce the plan administrator to comply with the statutory mandate rather than to compensate the plan participant for any injury she suffered as a result of non-compliance."). Further, on one occasion, the Seventh Circuit suggested that it might have been "inclined" to find that the limitations period for statutory-penalty actions applied to claims under § 502(c) if the defendant had not waived the argument. *See Anderson v. Flexel, Inc.*, 47 F.3d 243, 247 (7th Cir. 1995). Based on these statements from the Seventh Circuit, several courts in this District have held that the most analogous state statute of limitations for such claims is the limitations period for actions for statutory penalties. *See, e.g.*, *McGinnis v. Costco Wholesale Corp. Emp. Benefits Program*, No. 20 C 50445, 2021 WL 4844094, at *8–9 (N.D. Ill. Oct. 18, 2021); *St. Alexius Med. Ctr.*, 2015 WL 5123602, at *5; *Hakim v. Accenture U.S. Pension Plan*, 656 F. Supp. 2d 801, 822 (N.D. Ill. 2009).

Without any controlling authority to the contrary, the Court will likewise apply the limitations period for statutory-penalty actions. In New York, the limitations period for actions to recover statutory penalties is three years. N.Y. C.P.L.R. § 214. Generally, under federal common law, "an ERISA claim accrues when the plaintiff knows or should know of conduct that interferes with the plaintiff's ERISA rights." *Young*, 615 F.3d at 816 (citations omitted). Thus, for purposes of § 502(c), a claim accrues thirty days after the plan participant or beneficiary requested the plan

information. *St. Alexius Med. Ctr.*, 2015 WL 5123602, at *5; *see Hakim*, 656 F. Supp. 2d at 823. The latest date that Thomas could have requested any information from the Plan administrator, such as Plan documents, was the date of his death: June 19, 2012. (CTAC ¶ 36) Any claim based on § 502(c) would, therefore, have accrued thirty days later on July 19, 2012. Thus, the three-year limitations period expired in 2015.

With respect to Boyle's requests for information, she alleges that Employer Defendants and Mercer Defendants failed to provide her with a complete copy of Thomas's insurance application and failed to give her timely and sufficient information about the status of her claims. (*Id.* ¶¶ 32, 46, 53, 106, 138, 151.) More specifically, she alleges that she requested information about Thomas's death benefits on December 10, 2012, and that Mercer Defendants declined her request to send screenshots of Thomas's application on December 19, 2012. (*See id.* ¶¶ 32, 46, 53.) Accordingly, Boyle's claim against Employer Defendants for their failure to send her a copy of Thomas's insurance application accrued thirty days after December 10, 2012. And the latest date that a claim could have accrued based on the alleged failure to provide Boyle with information about the status of her claim was in 2013, when the Appeals Committee resolved her appeal and affirmed the denial of her benefits claim. (*See id.* ¶ 94.) Because the limitations period for both alleged violations had run by no later than 2016, and Boyle did not file this lawsuit until 2021, Boyle's ERISA claim pursuant to § 502(c) is time-barred.[5]

---

[5] In the Complaint, Boyle also alleges that neither she nor Thomas was provided with the 2009 SPD Supplement. (CTAC ¶ 30.) In her response to L-3 Defendants' motion to dismiss, Boyle argues that the limitations period should be tolled until she received the 2009 SPD Supplement from L-3 Defendants on May 6, 2022. (Pl.'s Resp. Br. to L-3 Defs.' Mot. at 12–13.) But Boyle has not alleged that she ever requested that information. And § 502(c) imposes liability only for a plan administrator's failure or refusal "to comply **with a request** for any information" which the administrator is required by ERISA to provide. 29 U.S.C. § 1132(c)(1) (emphasis added).

Boyle seeks to salvage her § 502(c) claim by invoking equitable tolling. That doctrine "permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Shropshear v. Corp. Couns. of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001). To be entitled to equitable tolling, a plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (citation omitted). Equitable tolling is seldom granted. *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). The only argument Boyle presents in favor of equitable tolling here is that Employer Defendants failed to provide her and Thomas with the 2009 SPD Supplement until the filing of L-3 Defendants' current motion. She claims that this failure "may reveal a cause of death that clearly falls within the coverage of the insurance, or may reveal a defense, such as a cover up, which may cause the tolling of the statute of limitations." (Pl.'s Resp. Br. to L-3 Defs.' Mot. at 13.)

Those circumstances, however, do not suffice to show that equitable tolling is warranted. Boyle fails to identify any facts suggesting that she has been diligently pursuing her rights since National Union denied her benefits claim in 2013, nor does she explain why she waited to file suit until 2021. Moreover, the Court does not view Employer Defendants' failure to provide Boyle with a copy of the 2009 SPD Supplement as an extraordinary circumstance preventing the timely filing of her Complaint, especially given that Boyle does not allege that Employer Defendants refused to comply with a request to send it to her.

Consequently, the part of Count III based on alleged violations of § 502(c) is dismissed.[6]

---

[6] Even if Boyle had not conceded relief under § 502(c) for her ERISA claim against Mercer Defendants, the Court would still dismiss any claim against them as time-barred for the same reasons as discussed for Employer Defendants. Additionally, liability under § 502(c) is limited to the plan administrator and does

## 2. Section 502(a)(1)(B)

Boyle also seeks to recover accidental death benefits allegedly owed to her under the Plan pursuant to § 502(a)(1)(B). That provision allows beneficiaries of an employee welfare benefit plan to bring a civil suit to recover plan benefits, enforce rights under the plan's terms, or clarify rights to future benefits under the plan's terms. 29 U.S.C. § 1132(a)(1). In her complaint, Boyle cites § 502(a)(1)(B) as a basis for her claim against Employer Defendants in Count III, but not for her claim against Mercer Defendants in Count IV. With their motion to dismiss, Employer Defendants assert that Boyle's ERISA claim under § 502(a)(1)(B) is untimely. Meanwhile, Mercer Defendants contend that that the Complaint did not give them adequate notice of Boyle's benefit-denial claim against them under § 502(a)(1)(B); alternatively, they claim that they cannot be liable under that section because they did not make the benefits determination.

### a. Employer Defendants

For civil actions under § 502(a) of ERISA, the Seventh Circuit borrows state-law limitations periods for suits on written contracts.[7] *Young*, 615 F.3d at 816. "A claim to recover benefits under § 502(a) accrues upon a clear and unequivocal repudiation of rights under the

_____

not include mere claims administrators. *See Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009). As explained above, none of the Mercer Defendants were the Plan administrator here.

[7] In its opening brief, SAIC Defendants argue that the Court must apply the Policy's five-year limitations period for civil actions. (SAIC Defs.' Br. at 7–8, Dkt. No. 82.) They rely on *Heimeshoff v. Hartford Life & Accident Insurance Co.*, in which the Supreme Court held that courts must use a plan's limitations period unless they "determine either that the period is unreasonably short, or that a controlling statute prevents the limitations provision from taking effect." 571 U.S. 99, 109 (2013) (internal quotation marks and citation omitted). In response, Boyle cites *Hewitt v. Lincoln Financial Corporation* for the proposition that several courts have found that U.S. Department of Labor regulations implementing ERISA require that a claim denial letter expressly declare the time limit within which a claimant must bring a civil action for a plan's limitations provision to be enforceable. No. 18 C 8235, 2021 WL 353884, at *2–3 (N.D. Ill. Feb. 2, 2021). Boyle contends that the claim denial letters she received did not notify her of the Policy's limitations period for civil actions, even though they informed her of her right to file suit. SAIC Defendants offer no rebuttal to this point, nor do they mention the Policy's limitations period at all. Failure to respond to an argument results in waiver. *See, e.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Consequently, the Court deems this argument as waived.

pension plan which has been made known to the beneficiary." *Id.* at 816 (internal quotation marks and citation omitted) (concluding that the plaintiff received a clear repudiation of her claim when the plan administrator's review committee resolved her administrative appeal). As discussed above in the Court's determination of the statute of limitations for the § 502(c) claim, New York law applies. New York has a six-year limitations period for breach of contract actions. *See* N.Y. C.P.L.R. § 213. So, the Court applies a six-year limitations period here.

Boyle received a clear repudiation of her claim for benefits under the Plan when the Appeals Committee resolved her appeal and affirmed the denial of her claim in November 2013. Therefore, Boyle's claim under § 502(a)(1)(B) accrued in November 2013, and the limitations expired in 2019. Her claim under § 502(a)(1)(B) is thus untimely. This conclusion is unaffected by Boyle's allegation that National Union, in July 2016, modified wording in its denial letters about Thomas's cause of death and whether there was an SPD that explained coverage at the time. (*See* CTAC ¶ 66.) At bottom, this change did not alter National Union's ultimate denial of Boyle's benefits claim in 2013. As a result, the part of Count III against Employer Defendants premised on § 502(a)(1)(B) is dismissed.

### b. Mercer Defendants

As to Mercer Defendants, assuming that the Complaint did provide fair notice of Boyle's claim against them under § 502(a)(1)(B), they are not proper defendants for such a claim.

"[A]n ERISA claim for benefits due ordinarily should be brought against the employee-benefits plan itself." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 764 (7th Cir. 2013) (citations omitted). With respect to claims under § 502(a)(1)(B), "a cause of action for benefits due must be brought against the party having the obligation to pay the benefits." *Id.* (internal quotations and citation omitted). Generally, that party is the plan. *Id.* But "where the plaintiff alleges that she is a

25

participant or beneficiary under an insurance-based ERISA plan and the insurance company decides all eligibility questions and owes the benefits, the insurer is a proper defendant in a suit for benefits due under § 1132(a)(1)(B)." *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 915–16 (7th Cir. 2013).

The 2010 SPD plainly states that L-3 Communications is the Plan administrator and has "delegated to the insurance company the full and complete discretionary authority and responsibility to decide all questions of eligibility for benefits under the Plan." (2010 SPD at 28.) While Boyle alleges that National Union identified Mercer Defendants as the Plan administrator and that Mercer Defendants had substantial responsibilities related to the Plan, she does not allege that Mercer Defendants had the discretion to determine eligibility for benefits or the obligation to pay claims. And the 2010 SPD does not suggest that Mercer Defendants had any such discretion or obligations. Accordingly, Boyle's claim against Mercer Defendants under § 502(a)(1)(B) is not viable. *Cf. Aerocare Med. Transp. Sys., Inc. v. Cigna Health Mgmt., Inc.*, No. 18 C 06437, 2020 WL 469301, at *3 (N.D. Ill. Jan. 29, 2020) ("[*Larson*'s] holding does not permit a § 1132(a)(1)(B) claim against a non-obligor claims administrator—like Cigna here—with less than sole and absolute discretion to deny benefits and make final and binding decisions as to appeals of those denials."). For this reason, Boyle's ERISA claim against Mercer Defendants under § 502(a)(1)(B) in Count IV is dismissed.[8]

---

[8] In a prior ruling regarding Boyle's First Amended Complaint, the Court likewise granted Mercer Defendants' motion to dismiss her claim to recover benefits under § 502(a)(1)(B). (09/29/2021 Mem. Op. and Order at 3, Dkt. No. 32.) The Court found that "there [were] no facts alleged from which one could reasonably conclude that the Mercer Defendants had any obligation to pay benefits to [Boyle] or [Thomas]." (*Id.*)

### 3. Section 502(a)(3)

Finally, Boyle asserts a claim for breach of fiduciary duty under ERISA § 502(a)(3) against Employer Defendants and Mercer Defendants. The same ERISA violations alleged for her claim under § 502(c) form the basis of her breach of fiduciary duty claim. Section 502(a)(3) authorizes beneficiaries of an employee welfare benefit plan to bring a civil action to enjoin acts or practices that violate ERISA or the terms of the relevant plan, or to obtain other appropriate equitable relief. 29 U.S.C. § 1132(a)(3). In seeking dismissal, Employer Defendants and Mercer Defendants argue that Boyle has not alleged ERISA claims under § 502(a)(3) in the Complaint, and even if she has alleged such claims, they are time-barred.

### a. Notice

The Court first determines whether the Complaint gave Employer Defendants and Mercer Defendants adequate notice of Boyle's breach of fiduciary duty claims under § 502(a)(3). To satisfy Federal Rule of Civil Procedure 8(a)'s notice-pleading standard, a "complaint must be sufficient to provide the defendant with 'fair notice' of the plaintiff's claim and its basis." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

Employer Defendants and Mercer Defendants contend that Boyle has not provided fair notice of any breach of fiduciary duty claim because she cites only § 502(a)(1)(B) and § 502(c) of ERISA. But a plaintiff is not required to plead a specific legal theory. *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022); *Zidek v. Analgesic Healthcare, Inc.*, No. 13 C 7742, 2014 WL 2566527, at *2 (N.D. Ill. June 6, 2014) (citation omitted) ("The plaintiff is not required to plead facts or legal theories or cases or statutes, but merely to describe his claim briefly and simply.").

27

And Boyle's factual allegations are more than sufficient to provide Employer Defendants and Mercer Defendants with fair notice of her breach of fiduciary duty claims and their bases.

For a plaintiff to pursue a breach of fiduciary duty claim under § 502(a)(3), the defendant must have acted "as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Brooks*, 729 F.3d at 765 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). In relevant part, a plan fiduciary under ERISA is a person named as a fiduciary by the plan or a person who exercises any discretionary authority, control, or responsibility with respect to the plan's management, administration, or assets. *Larson*, 723 F.3d at 916; *see* 29 U.S.C. §§ 1002(21)(A), 1102(a). The duty to disclose material information is a fiduciary duty. *See Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010). In the context of ERISA, this duty includes "an obligation not to mislead a plan participant or to misrepresent the terms or administration of an employee benefit plan" and "to communicate material facts affecting the interests of beneficiaries." *Id.* (citations omitted).

While she does not expressly refer to Employer Defendants and Mercer Defendants as fiduciaries, Boyle does allege that they had responsibilities related to the Plan's management and administration. For instance, she alleges that Mercer Defendants administered the online application portal where Thomas applied for insurance under the Plan, they billed Thomas for the Policy, they responded to her request for information regarding Thomas's benefits, they communicated with National Union during the claims review process, and they helped investigate the appeal of her claims denial. (CTAC ¶¶ 28, 35, 53, 58, 90.) With respect to Employer Defendants, Boyle refers to the 2010 SPD as the "Employer's" and asserts that Employer Defendants assisted National Union's investigation of her claim. (*Id.* ¶¶ 29, 90.) Notwithstanding Boyle's allegations to the contrary, the 2010 SPD also identifies L-3 Communications as the

28

named fiduciary and Plan administrator and sponsor. (2010 SPD at 32.) For both Employer Defendants and Mercer Defendants, Boyle further alleges that they failed to disclose critical information about the Plan's benefits and the Policy's exclusions, such as failing to provide Thomas with the 2010 SPD and 2009 SPD Supplement and failing to disclose the Afghanistan Exception to the War Risk Exclusion Waiver. (CTAC ¶¶ 31, 52, 138, 151.)

In a nutshell, these allegations provided Mercer Defendants and Employer Defendants with notice of a breach of fiduciary duty claim, as the allegations suggest that they had fiduciary duties related to the Plan and violated them.[9]

### b.      Statute of Limitations

Employer Defendants and Mercer Defendants next argue that any claim for breach of fiduciary duty is untimely. Unlike other sections of ERISA, the statute expressly establishes a limitations period for breach of fiduciary duty claims. The limitations period is the earlier of:

(1) [S]ix years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

---

[9] Additionally, Boyle labels Count III as "Employer ERISA Breaches" and Count IV as "Marsh ERISA Breaches" (CTAC at 20, 23), implying that she is alleging multiple violations of ERISA. While she did not do so in the operative Complaint, Boyle previously alleged in the First Amended Complaint and Second Amended Complaint that Mercer Defendants and L-3 Defendants breached their fiduciary duties, such as failing to provide sufficient information to Thomas during the application process and failing to provide her with timely and sufficient written information about the status of her claims. (First Am. Compl. ¶¶ 38–40, Dkt. No. 24; Second Am. Compl. ¶¶ 128–31, Dkt. 38.) (Boyle did not name all the SAIC Defendants as parties to the litigation until she filed her Third Amended Complaint on February 7, 2022.) These allegations mirror those in the present Complaint, except that Boyle does not expressly call the conduct a breach of fiduciary duty.

29 U.S.C. § 1113. Thus, there are two different means of determining the time limit for filing an action.

Turning to the first, § 1113(1), the term "cure" means "fix," rather than "provide a remedy," because if interpreted otherwise, the limitations period would continue indefinitely. *See Librizzi v. Child.'s Mem'l Med. Ctr.*, 134 F.3d 1302, 1307 (7th Cir. 1998); *see also Grosso v. AT&T Pension Benefit Plan*, No. 18 CIV. 6448, 2022 WL 2533000, at *3 (S.D.N.Y. July 7, 2022) ("Section 1113(1) should not be read as extending a defendant's exposure to liability indefinitely under the rationale that Defendants could have 'cured the breach or violation' at any point after the omission."). Accordingly, the last opportunity to cure an omission is the last date on which the defendant could have prevented the plaintiff's alleged injury or harm. *See Zirnhelt v. Mich. Consol. Gas Co.,* 526 F.3d 282, 288 (6th Cir. 2008) ("[T]he underlying alleged misconduct necessarily occurred between 1965 and 1977, after which the company could not have cured any breach because, by then, the harm had been done."); *Olivo v. Elky*, 646 F. Supp. 2d 95, 102 (D.D.C. 2009) (finding that defendants could no longer cure the breach of their obligation to inform plaintiffs of their eligibility to enroll in the plan once plaintiffs suffered the alleged injury, specifically their inability to make income contributions to the plan and receive matching employer contributions); *see also Moyle v. Liberty Mut. Ret. Benefit Plan*, 263 F. Supp. 3d 999, 1020–21 (S.D. Cal. 2017) (collecting cases); *Fischer v. Carpenters Pension & Annuity Fund of Phila. & Vicinity*, No. 10-3048, 2012 WL 602170, at *5 (E.D. Pa. Feb. 24, 2012) (holding that defendant's last opportunity to cure an omission was "the last date on which [d]efendant could have averted [p]laintiff's detrimental reliance on the incomplete information").

Boyle alleges several breaches of fiduciary duties under ERISA, including that Employer Defendants and Mercer Defendants failed to provide Thomas with the 2010 SPD and 2009 SPD

Supplement, failed to provide Thomas with sufficient information about the Policy's coverage and exclusions during the application process, failed to provide her with timely and adequate written information about the status of her claims, failed to provide her with all insurance benefits owed to her, and failed to disclose the Afghanistan Exception to the War Risk Exclusion Waiver. The latest date on which Employer Defendants and Mercer Defendants could have prevented Boyle's alleged injury—namely, her inability to receive Thomas's death benefits because of their failure to disclose information about the Policy's exclusions—was in November 2013 when the Appeals Committee affirmed the denial of her benefits claim. Under the statute's six-year limitations period in 29 U.S.C. § 1113(1), Boyle was required to file her claims for breach of fiduciary duty by November 2019.

Turning to the three-year limitations period under § 1113(2), a plaintiff has actual knowledge of a violation when he knows "the essential facts of the transaction or conduct constituting the violation." *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir. 1992). While it is not apparent from the complaint when Boyle acquired actual knowledge of the alleged violations, this information is immaterial for § 1113(2) because the statute requires the Court to apply the ***earlier*** of the six-year or three-year limitations period. Even if Boyle did not actually learn of the violations until she filed suit in 2021 (meaning that the three-year limitations period expires in 2024), the six-year limitations period (which expired in 2019) governs because it provides the earlier filing deadline. Hence, Boyle's claims would appear to be untimely.

According to Employer Defendants and Mercer Defendants, that is the end of the inquiry. However, they ignore the fraud-or-concealment exception to the general limitations period in § 1113, which "allows an action to be commenced six years after the plaintiff actually learned of the breach." *Laskin v. Siegel*, 728 F.3d 731, 735 (7th Cir. 2013); *see* 29 U.S.C. § 1113. "An

ERISA fiduciary commits fraud or concealment by delaying a wronged beneficiary's discovery of his claim either by misrepresenting the significance of facts the beneficiary is aware of (fraud) or by hiding facts so that the beneficiary does not becomes aware of them (concealment)." *Laskin*, 728 F.3d at 735 (citation omitted).

In the Complaint, Boyle alleges facts suggesting that Defendants have omitted and refused to provide certain information, which indicates that the fraud-or-concealment exception might apply. For example, she alleges that National Union drafted a denial letter stating that blast injuries caused Thomas's death yet in internal notes stated that it did not know the actual circumstances of Thomas's death; that National Union did not affirmatively indicate in its final denial letter what the actual circumstances of Thomas's death were; that National Union internally questioned whether Thomas would have been aware of the Afghanistan Exception to the War Risk Exclusion Waiver; that National Union has withheld information about its investigation; that National Union has changed language in its denial letters about Thomas's cause of death and whether there was an SPD at the time which explained coverage; and that Employer Defendants, Mercer Defendants, and National Union have denied her requests for a copy of Thomas's insurance application. (CTAC ¶¶ 32, 43, 64–66, 111, 117.) In their briefing, Employer Defendants and Mercer Defendants do not question whether the Complaint plausibly alleges the fraud-or-concealment exception; indeed, they do not address the exception at all.

Moreover, as noted above, it is unclear from the Complaint and accompanying documents exactly when Boyle discovered the alleged breaches. Thus, the Court does not have adequate facts to conclude when the six-year limitations period under the fraud-or-concealment exception accrued and the limitations period expired. As a result, the Complaint does not set forth all

necessary facts to establish a statute-of-limitations defense for Boyle's breach of fiduciary duty claims.

Accordingly, at this juncture, the Court denies Employer Defendants' and Mercer Defendants' motions to dismiss Boyle's breach of fiduciary duty claims under § 502(a)(3) in Counts III and IV.

### D.     Request to Strike Demand for Jury Trial

As an alternative to dismissal, Employer Defendants and Mercer Defendants request that the Court strike the jury demand included in Boyle's Complaint.

"The general rule in ERISA cases is that there is no right to a jury trial because ERISA's antecedents are equitable, not legal." *McDougall v. Pioneer Ranch Ltd. P'ship*, 494 F.3d 571, 576 (7th Cir. 2007) (internal quotation marks and citation omitted). Accordingly, courts in this District frequently grant motions to strike a jury demand where the plaintiff seeks solely equitable relief under ERISA. *See, e.g.*, *Garrity v. Sun Life & Health Ins. Co. (U.S.)*, 596 F. Supp. 3d 1111, 1119 (N.D. Ill. 2022); *Daugherty v. Univ. of Chi.*, No. 17 C 3736, 2017 WL 4227942, at *9 (N.D. Ill. Sept. 22, 2017); *Walker v. Life Ins. Co. N. Am.*, No. 08 C 6768, 2009 WL 561834, at *2 (N.D. Ill. Mar. 2, 2009). As stated above, Boyle's state-law claim asserted against Employer Defendants in Count II must be dismissed as preempted. The Court further dismissed Boyle's ERISA claims under § 502(a)(1)(B) and § 502(c) against Employer Defendants and Mercer Defendants in Counts III and Count IV. Boyle's remaining claims against Employer Defendants and Mercer Defendants in Counts III and IV for breach of fiduciary duty under § 502(a)(3) presumably seek equitable relief because only equitable relief is available under that section. *See* 29 U.S.C. § 1132(a)(3). Boyle has no right to a jury for these ERISA claims.

Boyle does, however, retain the right to a jury trial as to her breach of contract claim against National Union. *See Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.2d 731, 735 (7th Cir. 2004) (explaining that "there is a right to a jury trial where either the Seventh Amendment or an ordinary statute of the United States so requires" and that, based on the Seventh Amendment, plaintiff was "entitled to demand a jury trial on its breach of contract claim"). Until the Court resolves which claims, if any, will go to trial, it would be premature to strike Boyle's jury demand altogether. Employer Defendants' and Mercer Defendants' requests to strike Boyle's jury demand are, therefore, denied without prejudice.

## II. Boyle's Motion to Dismiss National Union's Counterclaim

The Court next considers Boyle's motion to dismiss National Union's Counterclaim. As noted above, National Union seeks a declaration that the Policy does not provide coverage for Thomas's death in Afghanistan because it resulted from declared or undeclared war, or an act of declared or undeclared war. Among other arguments, Boyle asserts that the Court should exercise its discretion to dismiss the declaratory judgment action because her breach of contract claim will resolve the same issue.

The Declaratory Judgment Act provides that courts "***may*** declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201 (emphasis added). Courts have long understood this statutory language "to confer on federal courts 'unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019) (citation omitted). In this District, courts regularly decline to exercise discretion over declaratory judgment counterclaims if the requested declaratory judgment claim substantially overlaps with the legal issues that will be addressed with the plaintiff's substantive claims. *See, e.g.*, *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1065 (N.D.

Ill. 2013) ("[C]ourts routinely dismiss counterclaims that seek to generate an independent piece of litigation out of issues that are already before the court; this includes counterclaims that merely restate an affirmative defense, as well as those which simply seek the opposite effect of the complaint."); *United States v. Zanfei*, 353 F. Supp. 2d 962, 965 (N.D. Ill. 2005) (dismissing the counterclaim for declaratory judgment as "repetitious and unnecessary," where the substantive legal issue was the same as the legal issue in the plaintiff's complaint already before the court); *F.T.C. v. Bay Area Bus. Council, Inc.*, No. 02 C 5762, 2003 WL 21003711, at *5 (N.D. Ill. May 1, 2003) (dismissing the counterclaim because "the substantive suit would resolve the issues raised by the [counterclaim]" and, thus, "the declaratory judgment action serves no useful purpose"); *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002) (dismissing the plaintiff's declaratory judgment action and finding that "the only apparent inconvenience or hardship" from the dismissal was that the plaintiff would now be the defendant in the substantive action, rather than the plaintiff, but noting that this was "a minor inconvenience").

Here, for its Counterclaim, National Union alleges that the War Risk Exclusion bars coverage for Thomas's death because his death occurred due to declared or undeclared war, or any act of declared or undeclared war. (Countercl. ¶¶ 15–16.) National Union seeks a declaration establishing this alleged fact but does not otherwise request any specific relief. (Countercl. at 4.) In contrast, Boyle asserts a breach of contract claim against National Union alleging improper denial of her benefits claim based on the undisclosed Afghanistan Exception to the War Risk Exclusion Waiver. (CTAC ¶¶ 70–129.) She also disputes National Union's determination that gunshot wounds and friendly fire did not cause Thomas's death. (*Id.* ¶¶ 62–65.) And she contends that National Union has waived the War Risk Exclusion and is estopped from asserting the Afghanistan Exception to the War Risk Exclusion Waiver as a basis for denying her claim. (*Id.*

¶¶ 119, 123.) In its answer to the Complaint, National Union maintains that it properly denied Boyle's benefits claim. (Answer to CTAC ¶¶ 43–49, 90–94, Dkt. No. 66.)

Considering these allegations together, the Court concludes that National Union's Counterclaim serves no useful purpose because the Court will have to resolve whether the War Risk Exclusion barred coverage for Thomas's cause of death and whether National Union properly denied Boyle's benefits claim to address Boyle's breach of contract claim. Despite National Union's protestations to the contrary, it makes no difference that National Union has not asserted a breach of contract claim in its Counterclaim. As the cases cited above illustrate, courts frequently dismiss declaratory judgment claims asserted in counterclaims, where the plaintiff's complaint will address the same substantive legal issue.

Accordingly, the Counterclaim is dismissed.

## CONCLUSION

For the foregoing reasons, Employer Defendants' and Mercer Defendants' motions to dismiss Boyle's Complaint (Dkt. Nos. 55, 78, 81) are granted in part and denied in part. As to Employer Defendants, Count II is dismissed with prejudice. For Employer Defendants and Mercer Defendants, Counts III and IV are dismissed in part, with prejudice, but only to the extent that Boyle's ERISA claims rest on § 502(a)(1)(B) and § 502(c). Boyle's breach of fiduciary duty claims pursuant to § 502(a)(3) are the sole remaining claims against Employer Defendants and Mercer Defendants in Counts III and IV. Further, Employer Defendants' and Mercer Defendants' requests to strike Boyle's jury demand are denied without prejudice. Finally, Boyle's motion to dismiss National Union's Counterclaim (Dkt. No. 73) is granted.

ENTERED:

Dated:  September 30, 2024

_____

Andrea R. Wood
United States District Judge