IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULINE BOYLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21-cv-02136 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| L-3 COMMUNICATIONS ) | |
| CORPORATION, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pauline Boyle ("Boyle") is the widow of Thomas J. Boyle, Jr. ("Thomas"), who died in 2012 while working in Afghanistan as a civilian trainer of the Afghan National Police. Prior to his death, Thomas enrolled to receive accidental death coverage under an insurance policy with Defendant National Union Fire Insurance Company of Pittsburg, Pa. ("National Union"). Boyle has sued National Union for breach of contract, in relation to its denial of her claim for accidental death benefits under Thomas's insurance policy. Among other things, Boyle alleges that National Union failed to provide coverage under the insurance policy and failed to disclose relevant terms of the policy to Thomas at the time of his enrollment. Boyle sets forth those allegations in Count I of her Corrected Third Amended Complaint ("Complaint"), which is now the operative complaint.[1] (Corrected Third Am. Compl. ("Compl."), Dkt. No. 52.) Now before the Court is National Union's Motion for Judgment on the Pleadings ("Motion"). (Def.'s

---

[1] Boyle's Complaint includes four counts against multiple Defendants. Only Count I concerns National Union. Counts II, III, and IV assert claims against other Defendants named in the Complaint. In a separate opinion, the Court dismissed Count II and dismissed in part Counts III and IV. (9/30/2024 Mem. Op. & Order, Dkt. No. 141.) Boyle's breach-of-fiduciary-duty claims in Counts III and IV are the sole remaining claims against the other Defendants.

Mot. for J. on Pleadings ("Def.'s Mot."), Dkt. No. 111.) For the reasons explained below, National Union's Motion is denied.

## BACKGROUND

The Court assumes familiarity with its Memorandum Opinion and Order dated September 30, 2024, which summarizes in detail the background of this case in addressing various Defendants' motions to dismiss Boyle's Complaint and Boyle's motion to dismiss National Union's Counterclaim. (Dkt. No. 141.) The Court focuses here on the allegations relevant to National Union's Motion, which are accepted as true and viewed in the light most favorable to Boyle as the non-moving party. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

### I. The Policy

This case concerns Boyle's efforts to collect on a claim for accidental death benefits pursuant to an insurance policy issued by National Union for the benefit of her husband, Thomas.[2] National Union issued the policy at issue—specifically, a group accidental death and dismemberment insurance policy ("Policy")—naming Thomas's employer as the "Policyholder." (*See* Compl. ¶¶ 25, 33; Compl., Ex. C at 1, Dkt. No. 52-3.) As an employee of the policyholder, Thomas was an "Insured Person" entitled to coverage under the Policy. (*See* Ex. C at 1, 5.)

The Policy provides for an "Accidental Death Benefit"—that is, "[i]f injury to the Insured Person results in death within 365 days of the date of the accident that caused the Injury,

---

[2] The allegations of the Complaint do not recite the relevant Policy provisions. And so, the Court relies on Exhibit C to the Complaint (Dkt. No. 52-3)—specifically, the Policy certificate—to describe those provisions. *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) ("Rule 12(c) permits a judgment based on the pleadings alone."); *see also Federated Mut. Ins. Co. v. Coyle Mech. Supply, Inc.*, 983 F.3d 307, 312 (7th Cir. 2020) ("Pleadings 'include the complaint, the answer, and any written instruments attached as exhibits.'" (quoting *N. Ind. Gun*, 163 F.3d at 452)).

2

[National Union] will pay 100% of the Principal Sum." (*Id.* at 8.) According to the Policy, "Injury" means:

> [A] bodily injury (1) which is sustained as a direct result of an unintended, unanticipated accident to the body and that occurs while the injured person's coverage under this Policy is in force, and (2) which directly (independent of sickness, disease, mental incapacity, bodily infirmity or any other cause) causes a covered loss.

(*Id.* at 4.)

Most relevant to National Union's Motion, the Policy establishes an exception to coverage ("War Risk Exclusion") as follows:

> No coverage shall be provided under this Policy and no payment shall be made for any loss resulting in whole or in part from, or contributed to by, or as a natural and probable consequence of any of the following excluded risks even if the proximate or precipitating cause of the loss is an accidental bodily injury. . . .
>
> 4. declared or undeclared war, or any act of declared or undeclared war.

(*Id.* at 21.) However, a rider to the Policy waives the War Risk Exclusion ("Waiver"). (*Id.* at 19.) The Waiver provides:

> [The War Risk Exclusion] is waived for an insured Person's loss caused in whole or in part by, or resulting in whole or in part from, declared or undeclared war or any act of declared or undeclared war, subject to the following restrictions:
>
> 1. The waiver only applies with respect to accidents that occur within the geographic limits or territorial waters of, or airspace above the geographic limits or territorial waters of, a Designated War Risk Territory.

(*Id.*) According to the Policy, a designated war risk territory ("Designated War Risk Territory") "means Worldwide" and "does ***not*** include" Afghanistan, among other countries. (*Id.* at 20.) This exception for Afghanistan ("Afghanistan Exception") means that the Policy does not provide coverage for such losses that occur in Afghanistan.

3

## II. Boyle's Allegations

In 2011, Thomas was hired to train the Afghan National Police as a civilian employee in his employer's law enforcement program. (Compl. ¶¶ 23, 27.) As part of his employment agreement, Thomas was eligible to apply for employee benefits, including coverage under the Policy. (*Id.* ¶¶ 24–25.) On April 26, 2012, while in transit to Afghanistan for his assignment, Thomas applied for the Policy through his employer's online application portal. (*Id.* ¶ 28.)

At the time he applied, Thomas was not provided complete or accurate information regarding the Policy's coverage and exclusions. (*Id.* ¶¶ 29, 31.) Neither Thomas's employment agreement, nor the Summary Plan Description ("SPD"), nor the online application portal disclosed the Afghanistan Exception. (*Id.* ¶¶ 50–52.) In fact, the SPD, the supplement to the SPD, and the Policy certificate, which sets out the relevant Policy terms, were not available on the portal at the time Thomas applied for coverage. (*Id.* ¶ 91.) And no one informed Thomas that he would not have coverage under the Policy for his service in Afghanistan, "the very country for which [Thomas] acquired the [Policy] coverage in the first place." (*Id.* ¶ 73.)

After reviewing Thomas's application, National Union issued the Policy, which was effective on June 1, 2012. (*Id.* ¶ 33.) A short time later, on June 19, 2012, Thomas was "accidentally killed" in Afghanistan. (*Id.* ¶ 36.) Prior to his death, Thomas had paid, and National Union accepted, all insurance premiums due on the Policy. (*Id.* ¶ 37.) To date, National Union has not provided Boyle a complete copy of Thomas's entire insurance application, despite her requests. (*Id.* ¶ 32.)

On July 11, 2012, Boyle submitted a claim for benefits under the Policy in the amount of $670,000, which National Union received on July 16, 2012. (*Id.* ¶ 38.) According to the Policy, National Union had 60 days following its receipt of written proof of loss—that is, until

4

September 14, 2012—to pay Boyle's claim. (*Id.* ¶¶ 39, 97.) In a draft denial letter, which was not sent to Boyle, and other internal correspondence, National Union stated that Thomas "sustain[ed] an accidental death due to blast injuries" and that Thomas was killed "by hostile, enemy force, ie insurgents." (*Id.* ¶¶ 43–44.) These statements were false. (*Id.*)

National Union subsequently denied Boyle's claim in a letter dated December 14, 2012—91 days after the deadline to respond to her claim. (*Id.* ¶ 47.) In its denial letter, National Union states that "enemy forces attacked, and [Thomas] was killed," and that Thomas "did sustain accidental injuries due to the attack." (*Id.* ¶ 48.) The letter goes on, however, to explain that although the attack was an act of declared or undeclared war, Afghanistan was not a Designated War Risk Territory under the Policy. (*Id.*) In short, National Union informed Boyle that the Waiver did not include service in Afghanistan. (*Id.* ¶ 81.)

On March 1, 2013, Boyle appealed the denial to National Union's ERISA Appeals Committee, which affirmed the denial on August 28, 2013. (*Id.* ¶¶ 54, 61, 116.) The Appeals Committee explained that it denied Boyle's claim because Thomas's cause of death was an excluded risk: declared or undeclared war, or any act of declared or undeclared war. (*Id.* ¶ 109.) The Appeals Committee rendered its decision 180 days after Boyle's appeal request, even though the deadline to affirm or reverse the denial was 60 days. (*Id.* ¶¶ 56, 61.)

During the appeals process, National Union had "queried internally" and "investigate[d] without conclusive proof" whether, at the time of enrollment, Thomas was able to view the SPD, whether Thomas would have seen the Waiver and Afghanistan Exception, and whether the online application portal described the Afghanistan Exception. (*Id.* ¶¶ 55, 110.) According to National Union's internal notes, the SPD did not specify which countries were not Designated War Risk Territories. (*Id.* ¶ 113.) Likewise, its internal notes state, as follows:

5

> [T]he war risk rider is also mentioned [in the plan summary] but the exclusions to this are in the cert[ificate]. The cert[ificate] would be received after enrollment…. I'm just thinking if it wasn't fully explained at the time of enrollment, there is a chance [Thomas would] be confused that it would waive the exclusion completely. It just doesn't make sense that someone would get that rider knowing that basically every troublesome country would be exclusive.

(*Id.* ¶ 111.) And other internal correspondence from a claims manager at National Union states:

> One thing to keep in mind is that [Thomas] was not excluded for Accidental Death coverage while in Afghanistan. If he had died due to injuries sustained in any number of different accident scenarios (e.g. car wreck, falling from a height, accidentally discharging a weapon, etc.), he would have been covered. He was only excluded from coverage from this particular loss, as it happened to be due to an act of declared or undeclared war in a country that was not a Designated War Risk Territory.

(*Id.* ¶ 55.)

Following the affirmed denial on appeal, Boyle requested reconsideration of the adverse decision on the grounds that gunshot wounds, not blast injuries, caused Thomas's death. (*Id.* ¶ 62.) In response, National Union sent Boyle another denial letter dated November 27, 2013, denying her claim of accidental death by friendly fire. (*Id.* ¶¶ 65, 94.) Yet internal correspondence indicates that National Union "d[id] not know the actual circumstances involved in [Thomas's] death." (*Id.* ¶¶ 64, 94.) Boyle filed this lawsuit almost eight years later on April 21, 2021. (*See* Dkt. No. 1.)

### III. Procedural History

In the Complaint, Boyle asserts a breach-of-contract claim against National Union for denying her claim based upon undisclosed terms in the Policy. (Compl. ¶¶ 70–129.) After the parties concluded briefing on the Motion, Boyle, as a *pro se* litigant, filed a second response to National Union's Motion without leave of Court.[3] (Dkt. No. 123.) National Union then filed a

---

[3] Boyle filed this action in April 2021 with the assistance of retained counsel. That counsel continued to represent Boyle for almost two years, until the Court granted counsel leave to withdraw in March 2023. (*See* Dkt. No. 105.) After asking the Court to allow her time to look for new counsel, Boyle did not retain new counsel, and thus she has been proceeding *pro se* since March 2023. In short, although former

motion to strike Boyle's second response, which the Court denied in a subsequent order. (Dkt. Nos. 125, 142.)

Boyle also filed a motion asking the Court to accept additional documentation as part of her pleading ("Materials")—namely, multiple exhibits that her former counsel did not attach to the Complaint. (Dkt. No. 126). Boyle attached the Materials to her initial response to National Union's Motion, her second response, and her subsequent motion for the Court to accept the Materials. (Dkt. Nos. 120, 123, 126.) Although the Court granted Boyle's motion, it did so with the limitation that it would only review the Materials to determine (1) whether any of the Materials were properly considered in connection with National Union's Motion, and (2) if not, whether the Materials should be considered and the Motion treated as a motion for summary judgment under Federal Rule of Civil Procedure 56, consistent with Federal Rule of Civil Procedure 12(d). (Dkt. No. 142.) Having reviewed and considered Boyle's submissions, the Court declines to convert National Union's Motion to a motion for summary judgment and, instead, rules on the Motion without relying on Boyle's Materials.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (quoting *Adams v. City*

---

counsel wrote the Complaint, Boyle submitted her filings in relation to National Union's Motion without the assistance of counsel. Accordingly, the Court construes her filing liberally. *See Childress v. Walker*, 787 F.3d 433, 436 n.1 (7th Cir. 2015) (construing a complaint liberally "because [it] was pro se" and "hold[ing] it to less stringent standards than pleadings drafted with the assistance of counsel" (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).

7

*of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014)). That is, "to survive a motion for judgment on the pleadings, a complaint must 'state a claim to relief that is plausible on its face.'" *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 357–58 (7th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In its review, the Court "draw[s] all reasonable inferences and facts in favor of the nonmovant, but need not accept as true any legal assertions." *Wagner*, 840 F.3d at 358. The Court grants judgment on the pleadings when "there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Local 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). Put differently, "[o]nly when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion." *Pike v. Phillips*, No. 14 C 0242, 2015 WL 1058187, at *1 (N.D. Ill. Mar. 6, 2015) (citing *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007)).

## I. The Cause of Thomas's Death

Boyle alleges that National Union breached its contract with Thomas in numerous ways. National Union's Motion, however, only addresses her allegation that it failed to provide coverage under the Policy.[4] At the center of this dispute is the cause of Thomas's death.

In its Motion, National Union maintains that the War Risk Exclusion precludes coverage for death caused by any act of declared or undeclared war. According to National Union, because

---

[4] Boyle's breach-of-contract claim arguably includes other examples of breach. Rather than addressing each alleged form of breach, National Union addresses the overarching issue of whether Thomas's death was excluded from coverage.

Thomas "was killed during an attack by insurgents on a military base in Afghanistan that [Thomas] was assigned to and working at the time of his death," the exclusion applies, and so, the Policy does not afford coverage. (Def.'s Mem. in Support of Mot. for J. on Pleadings at 7, Dkt. No. 112.) Further, according to National Union, the Waiver does not apply "because the insurgent attack resulting in [Thomas's] death occurred in Afghanistan, which is not a 'Designated War Risk Territory.'" (Def.'s Mot. ¶ 13.) For these reasons, National Union contends that it properly denied Boyle's claim for coverage based on the plain language of the War Risk Exclusion.

Yet, despite National Union's contention to the contrary, the application of the War Risk Exclusion remains unclear because the parties dispute the cause of Thomas's death. In her Complaint, Boyle alleges that Thomas "was accidentally killed" and that he died from gunshot wounds, not blast injuries. (Compl. ¶¶ 36, 62). In its Answer, National Union "admits only that it was advised of [Thomas's] death," but denies the remaining allegations. (Answer ¶¶ 36, 62, Dkt. No. 66.). Further, National Union allegedly stated that insurgents killed Thomas, but Boyle maintains that this characterization of his death is false. (Compl. ¶ 44). Boyle also points to National Union's internal correspondence, in which its employees admitted that they did not know the actual circumstances of Thomas's death. (*Id.* ¶¶ 64, 94.) National Union, however, denies that Boyle's allegations "fully and accurately state [its] coverage position." (Answer ¶¶ 64, 94).

The parties' briefs on the Motion shed additional light on their dispute over the events that led to Thomas's death and whether those events triggered the War Risk Exclusion. Although the Complaint contests the idea that insurgents killed Thomas, National Union asserts otherwise and mischaracterizes the Complaint as alleging that Thomas was killed during an insurgent

9

attack. (*See* Def.'s Mot. ¶ 6.) In her response brief, however, Boyle clarifies her theory that Thomas's cause of death was not an insurgent attack but "fratricide"—that is, "accidental homicide." (Pl.'s Resp. to Def.'s Mot. ¶¶ 5, 11, Dkt. No. 120.) Replying to this point, National Union argues that it is irrelevant whether Thomas's death was even an accident because the War Risk Exclusion bars coverage "even if the proximate or precipitating cause of the loss is an *accidental bodily injury*." (Ex. C at 21 (emphasis added).) Pointing to this language, National Union claims that the exclusion plainly applies where Thomas died of gunshot wounds in Afghanistan and that any dispute over accidental events does not affect coverage.

Based on the contents of the pleadings, there is clearly a factual dispute over the cause of Thomas's death—that is, how Thomas died, whether Thomas's death was an accident, and whether his death, even if accidental, resulted from an act of declared or undeclared war. While National Union maintains that the potentially accidental nature of Thomas's death is immaterial, that is not the case. Even if an accidental bodily injury was the "proximate or precipitating cause" of Thomas's death, his death must, nevertheless, have "result[ed] in whole or in part from, or [been] contributed to by, or [been] a natural and probable consequence of . . . declared or undeclared war, or any act of declared or undeclared war," for the Policy to preclude coverage. (Ex. C at 21.) While National Union denies that the allegation fully or properly states its position, Boyle references internal correspondence in which National Union's own claims manager explains that various accidental scenarios unrelated to war would warrant coverage. (Compl. ¶ 55; Answer ¶ 55.) And although Thomas died in Afghanistan, his assignment to Afghanistan does not necessarily render his death a "natural and probable consequence" of declared or undeclared war. (Ex. C at 21.)

10

Overall, Boyle's pleadings suggest that accidental events unrelated to war account for Thomas's death. For the purposes of ruling on this Motion, the Court construes all reasonable inferences and facts in favor of the nonmovant, Boyle. Interpreting the facts in her favor, the Court finds that Boyle has stated a plausible claim to relief by contending that Thomas's death was an accident that does not fall under the War Risk Exclusion. For that reason, and the reasons that follow, National Union's Motion is denied.

## II. The Disclosure of Relevant Policy Terms

In connection with her breach-of-contract claim, Boyle also alleges that National Union failed to disclose relevant terms in the Policy—namely, the War Risk Exclusion, the Waiver, and the Afghanistan Exception. Here, again, the pleadings show that the parties dispute material facts. Specifically, National Union denies Boyle's allegations that no one informed Thomas of the relevant Policy terms; that pertinent documents like the SPD, its supplement, and the Policy certificate were unavailable to Thomas when he applied; and that National Union internally expressed uncertainty about Thomas's awareness of and access to the Policy terms. (Answer ¶¶ 73, 91, 110.) Although National Union denies the allegations, the Complaint contains numerous references to internal documents and correspondence showing that National Union employees themselves questioned whether Thomas saw the relevant provisions. (Compl. ¶¶ 55, 110–11.) In its Answer, National Union does not admit the allegations but instead "asserts that its written correspondence speaks for itself" and denies that Boyle's allegations "fully and completely set forth the content of such correspondence." (Answer ¶ 111; *see also id.* ¶ 55.) Given the factual disputes between the parties, it is unclear whether the material terms of the Policy were available to Thomas when he applied for coverage.

In its reply brief, National Union characterizes Boyle's contention that the relevant Policy terms were concealed from Thomas at the time of enrollment as a "last-ditch effort" that "goes to the theory of 'rescission' which generally serves as a basis of voiding coverage." (Def.'s Reply at 4, Dkt. No. 122.) As support, National Union cites *Call One Inc. v. Berkley Insurance Co.*, 655 F. Supp. 3d 733 (N.D. Ill. 2023). However, in *Call One*, the insurer, not the insured party, sought rescission of the policy "based on [the insured party's] alleged misrepresentations in the policy application." *Id.* at 736. There, the insurer brought the rescission claim to retroactively void the insurance contract and thereby relieve itself of any obligation to cover the insured party. *Id.* at 736–38. Here, however, the Complaint does not set forth a rescission claim, nor does Boyle express any desire to evade coverage under the Policy. On the contrary, Boyle has brought this breach-of-contract suit as an insured party who disputes National Union's refusal to cover her insurance claim and thereby requests damages for its denial. Based on the pleadings, a theory of rescission is inapplicable to the facts of the case.

Given Boyle's allegations and National Union's denials, there are factual disputes as to whether the relevant Policy language was disclosed to Thomas when he enrolled for coverage. While the Court cannot resolve these disputes at the pleadings stage, the Court views the facts in the light most favorable to Boyle. By alleging that National Union neglected to disclose material terms of the Policy, Boyle has set forth a plausible claim to relief. As such, the Court cannot grant National Union's Motion.

**CONCLUSION**

For the foregoing reasons, National Union's Motion for Judgment on the Pleadings (Dkt. No. 111) is denied.

ENTERED:

Dated: March 31, 2025

_____
Andrea R. Wood
United States District Judge

13